IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Alexis Templeton, Maureen Costello, | ) | |
| Brittany Ferrell, Steven Hoffmann, | ) | |
| Nile McClain, and Kira Hudson Banks, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Sam Dotson, Chief of Police, | ) | |
| City of St. Louis, | ) | |
| Jon Belmar, Chief of Police | ) | |
| County of St. Louis, | ) | No. 4:14-cv-2019 |
| Capt. Ronald Johnson, Missouri | ) | |
| Highway Patrol, in their official | ) | |
| capacities and as directors of the Unified | ) | |
| Command | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

COMES NOW Plaintiffs, by and through undersigned counsel, and for their Complaint, state as follows:

## PRELIMINARY STATEMENT

1.      This is an action for injunctive relief brought under 42 U.S.C. § 1983 to enforce the protections of the First Amendment, Fourth and Fourteenth Amendments to the United States Constitution, and under Art. 1, Secs. 8, 9, and 10  of the Missouri Constitution.

2.      Plaintiffs have engaged in constitutionally protected First Amendment activity in the wake of the shooting death of Michael Brown by Ferguson Police officer Darren Wilson in August 2014 and plan to further engage in constitutionally protected activities.

3.      Plaintiffs are residents of St. Louis City or St. Louis County in the State of Missouri and have engaged in activity protected by the First Amendment to raise awareness of racially discriminatory practices of law enforcement officers in multiple jurisdictions St. Louis City and St. Louis County.

4.      Plaintiffs, in the course of the lawful exercise of First Amendment rights, have all been subjected to actions by police acting under authority of command now designated as the Unified Command, designed to frighten and intimidate plaintiffs and to deter their continued exercise of First Amendment rights. Officers acting under authority of Unified Command have intimidated demonstrators, impeded their entry or exit from demonstrations, assaulted them with chemical agents including tear gas and pepper spray, shot them with so-called "less-than-lethal" projectiles, rounded them up in mass arrests, engaged in physical and verbal abuse, failed to visibly identify themselves, and categorically labeled demonstrations as unlawful assemblies.

5.      Tear gas is a chemical agent, precluded from use in warfare. Tear gas most frequently causes intense burning sensations and skin irritation, chest pain and difficulty breathing. These effects can be magnified for vulnerable persons, such as children and those with asthma. Other reports indicate that tear gas can cause miscarriages and

stillbirths, damage to major organs or even death, due to the chemical or physical impact of the canister. The effects of being gassed may also cause psychological harm such as flashbacks or hyper-vigilance, both symptoms of trauma.

6.      Specifically, as is alleged herein, police acting under authority of Unified Command knowingly used tear gas and other chemical agents against demonstrators including Plaintiffs in a manner designed to inflict pain and anguish rather than accomplishing any legitimate law enforcement objective.  Children and elderly people were among the crowds when the police launched tear gas upon them without warning and often with no clear means of egress. Further, as alleged herein, police acting under authority of Unified Command categorically labeled gatherings as unlawful assemblies, boxed in demonstrators without ample means of exit, failed to wear visible identification and failed to provide ample notice or opportunity to exit before administering chemical agents upon crowds, administered chemical agents at peaceful demonstrators, and administered chemical agents in ways targeted and designed as punishment.

7.      Plaintiffs bring this suit against Sam Dotson, Chief of Police, City of St. Louis,  Jon Belmar, Chief of Police, County of St. Louis, Capt. Ronald Johnson, Missouri Highway Patrol, in their official capacities and as Co-Directors of the Unified Command created by Governor Jay Nixon to oversee law enforcement response to demonstrations in the wake of the shooting of Michael Brown.

8.     The constitutional rights of plaintiffs, demonstrators, and those similarly situated, will be denied, and irreparable harm will result, if the Court does not provide immediate relief in the form of granting a Temporary Restraining Order, Preliminary and Permanent Injunctive relief, enjoining defendants from preventing, impeding or intimidating their exercise of free speech.

## JURISDICTION AND VENUE

9.     This court has original jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 42 U.S.C. sec. 1983, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

10.    This Court has jurisdiction over plaintiffs' claims under the Missouri Constitution pursuant to its pendent jurisdictional powers.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that the matter arises within the Eastern District of Missouri.

12.    Divisional venue is in the Eastern Division because the events leading to the claim for relief arose in the County of Saint Louis and Defendants Sam Dotson, and Jon Belmar are located in the County of Saint Louis, Missouri. E.D. MO. L.R. 2.07(A)(1), (B)(2).

## PARTIES

13.    Plaintiff Alexis Templeton is a 20-year old African American woman, a resident of Ferguson, MO, in the County of  St. Louis and a co-founder of Millennial Activists United.

4

14.    Plaintiff Maureen Costello is a resident of the City of St. Louis and the owner of MoKaBe's Coffeehouse, located in the City of St. Louis.

15.    Plaintiff Brittany Ferrell is a 25-year-old African American female, a resident of the City of St. Louis and a co-founder of Millennial Activists United.

16.    Plaintiff Steven Hoffman is a 31-year-old white male, a resident of the County of St. Louis and has served as a legal observer throughout the demonstrations over the past three months.

17.    Plaintiff  Kira Hudson Banks is a 35-year-old African American female, a resident of  the City of  St. Louis, a mother of two young boys, and a Professor of Psychology at Saint Louis University.

18.    Plaintiff Nile McClain is a 20-year-old African American female, a permanent resident of the City of St. Louis, who is currently a student at Southeast Missouri State University.

19.    Defendant Sam Dotson is Chief of Police for the City of St. Louis and in that capacity oversees the law enforcement operations in the City of St. Louis.  He is co-director of a Unified Command created pursuant to Executive Order 14-14 dated November 17, 2014 and thus has, along with the other co-directors of the Unified Command, oversight and control of all of the law enforcement response to demonstrations following the killing of Michael Brown.

20.     Defendant Jon Belmar is Chief of Police for the County of St. Louis and in that capacity oversees the law enforcement operations in the County of St. Louis.    He is co-director of a Unified Command created pursuant to Executive Order 14-14 and thus has, along with the other co-directors of the Unified Command, oversight and control of all of the law enforcement response to the demonstrations following the killing of Michael Brown.

21.     Defendant Ronald Johnson is a Captain in the Missouri Highway Patrol, and in that capacity oversees the law enforcement operations of the Missouri Highway Patrol.  He is co-director of a Unified Command created pursuant to Executive Order 14-14 and thus has, along with the other co-directors of the Unified Command, oversight and control of all of the law enforcement response to the demonstrations resulting from the killing of Michael Brown.

22.     Defendants Sam Dotson, Jon Belmar and Ronald Johnson are sued in their official capacities as co-directors of the Unified Command.

## FACTS

23.      On August 9, 2014, Darren Wilson, a police officer of the City of Ferguson's police department, shot and killed 18-year old Michael Brown, who was unarmed. His body was left uncovered in the middle of the street that runs through the Canfield Green Apartments—a densely populated apartment complex—for over four hours.

24.     This incident highlighted and reinforced a history of racial tensions in the City of Ferguson and the St. Louis region as well as the longstanding degrading treatment of African American residents by an overwhelmingly white police force.

25.     Since Michael Brown's death, police have shot and killed two additional African American men in the St. Louis region.

26.     On August 19, 2014, just 10 days after Mike Brown was killed by police in St. Louis County, City of St. Louis police officers killed 25 year old Kajieme Powell when they fired twelve shots at him.

27.     On October 8, 2014 an off-duty police officer in the City of St. Louis shot and killed Vonderritt Meyers.

28.     Citizens outraged by the conduct of police and other government agencies have taken to public streets and sidewalks in Ferguson, Missouri, as well as other parts of St. Louis County and St. Louis City in a variety of spontaneous and planned demonstrations to express their concerns about police actions, including excessive use of force, in African American communities.

29.     Those engaging in these actions have done so as part of a political protest, pursuant to their rights under the First Amendment. Their purpose is seek justice for the deaths of young black men and women at the hands of police, to bring attention to issues of police violence and racist policing in communities of color, and to advocate for policing reforms.

30.     Early demonstrations were met with a heavily militarized response by police, including appearing at the outset of peaceful demonstrations in tanks and riot gear, shooting demonstrators with tear gas, pepper spray and rubber bullets; rounding them up in mass arrests; impeding entry or exit from demonstrations; engaging in physical and verbal abuse, and categorically labeling demonstrations as unlawful assemblies.

31.     Community members and leaders, including leaders in the Don't Shoot Coalition, met with Defendants over a period of weeks to raise concerns about these behaviors and advocate for Rules of Engagement for demonstrations following announcement of the Grand Jury's decision. Defendants and elected leaders acknowledged assent to many rules of engagement, including protocols for  use of chemical agents, in a press conference on November 20, 2014.

32.     Four days later, sometime after 8 p.m., St. Louis County Prosecutor Robert McCulloch announced that a St. Louis Grand Jury refused to indict Darren Wilson, the police officer who killed Michael Brown.

33.     The demonstrations increased in frequency after the announcement of the Grand Jury's decision. Demonstrations continue to this day and are anticipated to continue with frequency in the days ahead.

34.     At these demonstrations, individuals are voicing their opinions about the failure of the legal system to secure justice for Michael Brown's family, as well as such broad issues of public concern as the relationship between police and the community; the frequency

with which police officers shoot unarmed black men; and the militarization of local police forces, and police accountability.  All of the Plaintiffs have participated in or been present at some of these demonstrations and intend to continue to do so.

35.     During the course of these demonstrations, Plaintiffs and others witnessed and experienced numerous incidents in which Defendants and their officers undertook actions which were purposefully designed to frighten and punish demonstrators by inflicting harm and to deter them from continuing demonstrative activities. Numerous examples of police abuse at demonstrations during the week following the announcement of the grand jury's decision cause Plaintiffs to believe that unless enjoined, their first amendment rights will continue to be impeded in the future.

**November 24-25, 2014 - St. Louis**

36.     On the night of November 24, 2014 and the morning of November 25, 2014, Plaintiffs and others were in the City of St. Louis near the MoKaBe's Coffeehouse at 3606 Arsenal St, St Louis, MO and were engaged in expressive conduct.

37.     Plaintiff Maureen ("Mo") Costello, owner of MoKaBe's Coffeehouse, is known in the community to be supportive of young activists and organizers engaged in work around police repression and racial profiling.  Plaintiff Costello kept the coffeehouse open as a place of safety and respite through the night of November 24th and morning of November 25th. Plaintiff Costello's Declaration is attached hereto as Exhibit 1.

38.     Plaintiffs and others near MoKaBe's Coffeehouse had earlier in the evening been confronted with a significant police presence in riot gear. The exact number of police is unknown but exceeded one hundred. The officers had no visible name badges or other identifying information which would allow Plaintiffs or others to individually identify them.[1] The demonstrators were ordered by the police to remove themselves from the roadway and they complied, standing in the area directly in front of MoKaBe's Coffeehouse.  After a delay, many of the large presence of police officers withdrew from the area.

39.     Plaintiffs Kira Hudson Banks and Brittany Ferrell were present at that time.  They saw some individuals who were not participating in the demonstration raise a garbage can lid in an apparent attempt to break a window of the AT&T store located across the street and Plaintiff Banks dissuaded the individuals from proceeding and continued to protect the store from any damage. While standing there, Plaintiffs Banks and Ferrell witnessed the demonstrators' comply with the officers' orders to get out of the streets and witnessed most of the large contingent of officers withdraw and leave.  Plaintiff Banks' and Ferrell's Declarations are attached hereto as Exhibits 2 and 3.

40.     Plaintiff Steven Hoffmann was also at the intersection of Grand and Arsenal, serving as a legal observer in the area near MoKaBe's where demonstrators had gathered. When he arrived at approximately 12:25a.m., following the dispersal order, he described

---

[1]  The U. S. Department of Justice admonished the Ferguson Police Department for their policy of permitting officers to remove or hide identifying information.  See: "Department of Justice admonishes Ferguson police," *CNN*, Sept. 26, 2014, available at: http://www.cnn.com/2014/09/26/us/ferguson-michael-brown-protests/

the scene as peaceful. The larger crowd that had gathered earlier had largely dispersed. Plaintiff Steven Hoffmann's Declaration is attached hereto as Exhibit 4.

41.     Suddenly, Plaintiffs Ferrell, Banks and Hoffmann observed police officers controlled by the Defendants speed north on Grand towards Arsenal in a black armored personnel carrier vehicle which was fitted with a turret type attachment for the firing of tear gas. The vehicle rapidly approached without siren or other warning device.  Without notice or warning, the vehicle began firing tear gas canisters at the unsuspecting Plaintiffs and others who were gathered in and around the area in front of MoKaBe's Coffeehouse and near the corner of Grand and Arsenal. Because there was no announcement or dispersal order prior to the administration of gas, Plaintiffs Ferrell and Banks were unable to put on adequate protective gear to escape the effects of the gas.

42.     Plaintiff Hoffmann was at the intersection at that time, but was across the street, where only two or three others were gathered. He observed police point out his green Legal Observer hat, and upon identifying him as a legal observer, police lodged a canister of tear gas directly at him, causing him fear and distress. The vehicle, which had traveled north on Grand, made a left at the intersection at Arsenal, where MoKaBe's is located.

43.     The vehicle, now at the intersection of Arsenal at Grand, pulled up right in front of MoKaBe's Coffeehouse and began firing directly at the coffeehouse. The tear gas canisters were aimed at and landed on the private patio that is part of the property owned by Plaintiff Costello directly in front of her coffeehouse, causing Plaintiffs and others immediate

serious distress. Plaintiffs Hoffmann and Ferrell observed numerous canisters of tear gas dispensed on people who were cornered in on the fenced patio area at very close range, causing them fear and distress.

44.    Plaintiffs and others present then ran, many running into the coffeehouse, which quickly became filled with tear gas.  Declarant Kelly Costello witnessed patrons inside trapped in a tear gas-filled room due to the gas lodged directly at the front entrance. Declarant Kelly Costello's statement is attached hereto as Exhibit 5.  Individuals inside the coffeehouse were in great distress, some lying on the floor, crying or vomiting. Several individuals attempted to open the back door of the coffeehouse to exit the coffeehouse and to allow the tear gas to escape.  However,  police officers also tear gassed the rear alley behind the back door, trapping all of those in the coffeehouse building.

45.    Plaintiffs and others were subjected to severe pain, distress and suffering.  These activities by Defendants were not preceded by any warning, accomplished no legitimate law enforcement objective, were not the least restrictive means to secure public safety, and were designed and intended to punish Plaintiffs and cause significant distress.

**November 24, 2014 - Ferguson**

46.    Earlier that evening of November 24 in Ferguson, officers acting under authority of the Unified Command also dispensed tear gas without warning or opportunity to disperse upon people demonstrating at the Ferguson Police Department with the family of Michael Brown following the announcement of the Grand Jury decision. Plaintiff Alexis

Templeton, a Ferguson resident who has been active in demonstrations as a co-founder of Millennial Activists United, was shot with tear gas without advance notice or opportunity to vacate, subjecting her to shock, pain, temporary vision loss and significant distress. This caused Plaintiff Templeton, who suffers from asthma, to experience difficulty breathing. She could not see and had to grab someone's arm to walk. Plaintiff Templeton witnessed canisters of tear gas being shot into residential areas, including into backyards of nearby homes. She had been tear gassed during demonstrations following Michael Brown's death, and the second experience caused her to re-experience that trauma. Police officers told Plaintiff Templeton, age 20, that the constitution did not provide any constitutional right to assemble. Plaintiff Alexis Templeton's declaration is attached hereto as Exhibit 6.

### November 25, 2014 - Downtown St. Louis

47. The next afternoon, on November 25, 2014, police again used chemical agents to frighten, punish and to cause pain, when a group of demonstrators blocked a highway in St. Louis. They were told to disperse and several refused as a matter of conscience to comply, lying down on the highway in an act of nonviolent non-resisting civil disobedience. Declarant Suzanne Brown's affidavit is attached hereto as Exhibit 7. Despite that the demonstrators were compliant and offered no resistance, officers refused to simply arrest them but rather used mace or pepper spray simply as punishment and to cause pain. In one example, Declarant Brown, a local attorney serving as a legal observer that day, witnessed an officer leave the police line to approach a peaceful demonstrator who had been verbally

complaining, solely to spray him with pepper spray, which then sprayed on others around him, including Declarant Brown, causing her and others pain and distress.

48.     None of the police officers observed by declarant Brown wore visible name badges or other visible identifying information, despite requests from the Department of Justice that police comply with name badge policies. However, in an apparent mockery of the Justice Department's requests, many officers had taped fake names such as  "Mr. Green", "Mr. White", etc. on the back of their helmets.

### November 25, 2014 - Ferguson

49.     Later that same day at a demonstration in Ferguson during the evening of November 25, 2014, Defendants and their officers undertook action designed to frighten demonstrators and had the effect of  deterring them from continuing in their demonstrative activities in Ferguson. Declarant James McAnally's statement is attached hereto as Exhibit 8.

50.      McAnally is the Executive Director and co-Founder of the Temporary Art Review and the founder, Co-Director, and Curator of the Luminary, an incubator for new ideas in the arts based in the City of St. Louis.

51.     McAnally arrived at approximately 10p.m. that night to demonstrate at the Ferguson police department with his wife and two friends. By 10:45, there were over 100 people outside the police station, forty to fifty of whom were amassed in the street.

52.     Police simultaneously ordered demonstrators to move to the sidewalk and pushed them back with their shields.  There was no time between the order to move to the sidewalk and police pushed the crowd with shields.

53.     As police knocked demonstrators to the ground with their shields, the police arrested them. Once the remaining demonstrators had been pushed to the sidewalk, some police dove into the crowd and grabbed random people to arrest. Other officers indiscriminately maced the demonstrators at the front of the line.

54.     There was no way to comply with the police or avoid mace.  Although they were not at the front of the line and although they had fully complied with officers' orders, McAnally and his wife were maced along with others.

55.     After indiscriminately macing several demonstrators, the police announced that the assembly had become unlawful and ordered the crowd to disperse.  McAnally and others attempted to comply with the orders of the police by retreating and moving to his right to leave the area.

56.     As he retreated, there were more police to his right, blocking any exit. McAnally was surrounded.  He could not comply with the orders of the police.

57.     As he turned back to find his wife, he saw that she had stopped to help another demonstrator who could not see due to the chemical agents the police sprayed in his eyes.

58.    As the police approached McAnally, he raised his hands in a gesture of surrender but two police officers picked him up and slammed him to the ground.  Soon, four other officers were around him.

59.    He turned his head to see the police attack his wife while she screamed out to them to stop hurting him.  Police pushed her to the ground, placed their knees in her back and neck and pinned her to the ground.  Although she screamed out that she was in pain, the officers would not stop.

60.    While being held in Ferguson, police told McAnally and others that they had been ordered to arrest demonstrators and charge them indiscriminately, even though they were certain that the charges would not stand.  Officers told McAnally and his wife that they should not have been out in Ferguson protesting.

61.    McAnally and others were held for 6 hours before being transferred to Clayton, processed and released.

**November 28, 2014 - Ferguson**

62.     A few days later, on the evening of November 28, citizens were again subjected to chemical agents without adequate warning or means or opportunity to disperse while demonstrating in front of the Ferguson Police Department.  Declarant Marques Banks, who was serving as a legal observer that evening, observed that officers again failed to have visible name badges or identification, despite two letters from the Department of Justice

demanding compliance with Ferguson's name badge policies. Marques Banks' declaration is attached hereto as Exhibit 9.

63.    Police cars were parked in alignment in front of the demonstrators, blocking their access to the Ferguson Police Department. Police in front of the cars then began approaching demonstrators pushing them back towards a parking lot owned by local business owner Andy Wurm across the street.

64.    Police had the street blocked off on both the right and left sides of the demonstrators as well, cornering them in. Then, without warning or opportunity to disperse, Police unleashed pepper spray upon the group, many of whom were backed into the private parking lot, and had no way of escape.

**November 30, 2014 - Downtown St. Louis**

65.    Two days later, on the afternoon of November 30, demonstrators participated in a peaceful march in downtown St. Louis, traveling towards the Trans World Dome, where the St. Louis Rams were playing. Declarant Marques Banks observed police surround demonstrators at both ends and inform them that if they were in the street, they would be subject to arrest and chemical munitions, though they did not so inform similarly situated football fans who were also in the street. Plaintiff McClain was among the demonstrators who participated in the march downtown that day. Plaintiff McClain's Declaration is attached hereto as Exhibit 10.

66.     Demonstrators then marched to Keiner Plaza, where police proceeded to encircle demonstrators, boxing them into the park area. Plaintiff McClain and Declarant Marques Banks observed that the crowd was boxed in, and that people were compliantly standing on the sidewalk. Neither observed any demonstrators in the streets.

67.     Nevertheless, Police aggressively arrested one demonstrator on the sidewalk and beat him with a baton. Plaintiff McClain, who was standing about 10 feet away and observing the incident, was then targeted for arrest. When she stated that she felt she had a right under the first amendment to observe as long as she as at a safe distance and not interfering, an officer pointed at her and yelled: "Get her!" Declarant Marques Banks observed as Plaintiff McClain was then thrust to the asphalt, beaten by several officers and tased, sustaining multiple injuries. She was later treated at a hospital. Police hurled racial slurs at McClain, calling her a "nappy-headed ho" and verbally demeaned her, telling her that she would never amount to anything in life. When she began crying due to the pain of the physical assault and the emotional trauma, police laughed at her and said, "that's what you get." She was taken to the Justice Center, booked and released about four hours later. See Declarations of Nile McClain and Marques Banks, Exhibits 9,10.

68.     Defendants' misuse of chemical munitions and unlawful assembly orders that was pervasive in the week following the announcement of the Grand Jury's decision was not limited to the period following the establishment of the Unified Command,  but are part of a policy and practice in which the Defendants consistently used chemical agents to punish

and cause pain to demonstrators dating back to August 2014, during demonstrations several months before the announcement of the Grand Jury verdict.

69.    On August 11, 2014, many residents reported being trapped as law enforcement blocked off the entrances and exits to main roads where demonstrators had gathered and began shooting rubber bullets and tear gas into the crowds. Children and elderly people were among the crowds when the police launched tear gas upon them without warning. On Sunday, August 17, 2014, Defendants' law enforcement officers launched tear gas into crowds without warning even though a state-imposed curfew had not yet gone into effect. In that group, numerous children were tear gassed, including some young enough to be in strollers. The St. Louis Children's hospital announced that it did indeed treat children who suffered from tear gas exposure, and photos of an eight year old victim were widely circulated.

70.    In response to those incidents, community leaders, including representatives of the Don't Shoot Coalition, met with law enforcement and elected officials to discuss police protocols in anticipation of demonstrations following the announcement of the grand jury's decision, and to urge temperance in the use of force and chemical munitions. Despite acknowledgement of various rules of engagement for the post-announcement demonstrations announced at a press conference on Friday November 20, 2014, including those related to the use of chemical agents, the Unified Command, as a policy ignored those announcements and law enforcement acting under authority of the Unified Command

acted egregiously, as described herein, following the grand jury announcement just four days later and throughout that week, causing plaintiffs significant distress, fear and intimidation.

71.    Accordingly, Plaintiffs have reason to believe and are fearful that they will be further harmed by the behavior of the Defendants' officers. They wish to continue to exercise their First Amendment rights and are fearful that they will be forced to either forego exercising those rights or be threatened with future mental and emotional distress, physical injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, and anxiety.

72.     Plaintiffs are informed and believe that the violations of their constitutional and lawful rights complained of herein were caused by customs, policies, directives, practices, acts and omissions of the Defendants CHIEFS DOTSON, BELMAR and CAPT. JOHNSON who encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct complained of herein.

73.    Said customs, policies and practices include, but are not limited to, the use of excessive and/or arbitrary force to disperse and control crowds and others involved in expressive activities; the failure to maintain adequate policies, and to adequately train, supervise and control officers under their supervision and control, concerning the policing of demonstrations and/or celebratory activities with respect to crowd control, crowd dispersal and the constitutional limitations on the use of force, and/or to adopt other

remedial measures and policies to insure that such violations of legal rights would not recur.

74.     As a direct and proximate result of the conduct of defendants described herein, the Plaintiffs have been denied their constitutional, statutory and legal rights as described herein and since they wish to continue to exercise their First Amendment rights are fearful that they will be forced to either forego exercising those rights or be threatened with future mental and emotional distress, physical injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, and anxiety, medical and related expenses, and lost earnings in an amount according to proof.

75.     Plaintiffs have been impeded from exercising their rights under the First, Fourth and Fourteenth Amendments to the United States Constitution and under Article I, Sections 8, 9 and 10 of the Missouri Constitution.

76.     Unless Defendants and their agents are enjoined, Plaintiffs and other members of the public will be irreparably harmed by being prevented from peacefully gathering in public spaces to express their views on pressing issues of public concern, activity protected by the First, Fourth and Fourteenth Amendments.

77.     Absent an Order from this Court, Plaintiffs will suffer irreparable injury.

## CLAIMS FOR RELIEF

## <u>COUNT I: FIRST AMENDMENT</u>

78.     Plaintiffs incorporate and reallege Paragraphs 1 - 77  as if fully set forth here.

79.     Defendants, acting under color of law, have and unless enjoined by this Court will continue to violate rights to peacefully assemble and speech guaranteed by the First and Fourteenth Amendment, and by Art. I, Sec. 8 of the Missouri Constitution.

80.     The actions complained of were pursuant to customs, policies, directives, practices, acts and omissions of the Defendants CHIEFS DOTSON, BELMAR and JOHNSON who encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct complained of herein.

81.     Plaintiffs have suffered irreparable harm by Defendants' infringement of their rights to free speech, and will continue to suffer irreparable harm unless relief is granted.

82.     Plaintiffs have no adequate remedy at law.

## COUNT II: FOURTH AMENDMENT

83.     Plaintiffs incorporate and reallege Paragraphs 1 - 77 as if fully set forth here.

84.     As a result of the particular use of force by Defendants, Plaintiffs and other demonstrators were consistently trapped either in enclosed locations or in public by the use of chemical agents to block egress.   Plaintiffs and other demonstrators were then subjected to severe physical and emotional pain as a result of being exposed to the chemical agents with no possibility of egress.

85.      Defendants, acting under color of law, have and unless enjoined by this Court will continue to violate rights to be free from unreasonable and unnecessary force in the course

of a detention as guaranteed by the Fourth and Fourteenth Amendments and by Art. I, Sec.

8 of the Missouri Constitution in the course of exercising First Amendment rights.

86.    The actions complained of were pursuant to by customs, policies, directives,

practices, acts and omissions of the Defendants CHIEFS DOTSON, BELMAR and

JOHNSON who encouraged, authorized, directed, condoned, and ratified the

unconstitutional and unlawful conduct complained of herein.

87.    Plaintiffs have suffered irreparable harm by Defendants' infringement of their rights

to be free from unreasonable and unnecessary force in the course of a detention particularly

while exercising their First Amendment rights as guaranteed by the Fourth and Fourteenth

Amendments and will continue to suffer irreparable harm unless relief is granted.

88.    Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs request

A.  That this Court schedule an emergency hearing and issue a temporary restraining

order and thereafter Preliminary and Permanent Injunctive Relief ordering that Defendants:

(1)   *cannot* deploy law enforcement officers to gatherings, organized protests or to

individuals engaged in protected First Amendment activity unless each carries on their

person clearly visible personal identification, including accurate name, law enforcement

agency and, if applicable, badge number.

(2)   *cannot* declare a gathering an unlawful assembly unless there is evidence that

six or more people are knowingly assembled and in agreement with each other to violate

any of the criminal laws of this state or of the United States with force or violence, as provided by RSMo 574.040(1).

(3)   *cannot* utilize chemical agents except as a last resort to prevent significant threats to public safety;

(4)  *cannot* utilize chemical agents on gatherings unless:

(a)    they are preceded by clear and unambiguous warnings, and an opportunity for sufficient time for to pass for members of the gathering to heed the warning and exit the area;

(b)    they are deployed in such a manner as to minimize impacts on the members of the gathering who are complying with lawful law enforcement commands;

(c)   they are deployed in such a manner as to always allow for a continuing means of safe egress from an area.

(5)   *cannot* utilize tear gas canisters or chemical agents on individuals or gatherings in a closed environment;

(6)    *cannot* utilize tear gas canisters or chemical agents on individuals or gatherings to frighten members of a gathering or demonstration;

(7)   *cannot* utilize chemical agents or physical violence on individuals being arrested when the individuals are not physically resisting arrest; and

B.    That this Court award Plaintiffs costs and attorneys fees pursuant to 42 U.S.C. sec. 1988; and such other and further relief as this court deems just and proper.

Dated:

Respectfully Submitted,

*/s/ Thomas B. Harvey*
Thomas B. Harvey   MBE#61734
Executive Director, ArchCity Defenders
812 N. Collins Alley
St. Louis, MO  63102
(855)724-2489 phone
(855)724-2489 facsimile
tharvey@archcitydefenders.org

*/s/ Brendan Roediger*
Brendan Roediger MBE #60585
Saint Louis University Legal Clinic
100 N. Tucker Blvd., Ste. 704
St. Louis, MO  63101
Phone:  (314) 977-2778
Fax:  (314) 977-1180
broedige@slu.edu

*/s/ Denise D. Lieberman*
Denise D. Lieberman, MBE #47013
Senior Attorney, Advancement Project
1220 L. Street NW, Suite 850
Washington, D.C. 20005
Phone: (314) 780-1833
Fax: (202) 728-9558
dlieberman@advancementproject.org

Justin D. Hansford*
Professor of Law
St. Louis University
100 N. Tucker Blvd.
St. Louis, MO  63101
Phone: (314) 977-3481
jhansford@slu.edu
*licensed in Maryland

Nicole C. Lee, Esq.*

The Lee Bayard Group, LLC
6930 Piney Branch Road, NW
Washington, DC 20012
(202)270-0774
nicole@leebayard.com
*Licensed in the District of Columbia
Bar #499275

L. King Downing*
2035 Second Avenue 5
New York, New York 10029
office/fax (212) 534-1081
kingnetic@yahoo.com
*licensed in New Jersey
 Lic. #034901992


COUNSEL FOR PLAINTIFFS