IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Alexis Templeton, *et al.* | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | 4:14-cv-2019 |
| Sam Dotson, Chief of Police, | ) | |
| City of St. Louis, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

### I. INTRODUCTION

*When an individual is protesting society's refusal to acknowledge his dignity as a human being, his very act of protest confers dignity on him.* -- Bayard Rustin

Plaintiffs seek an emergency order enjoining defendants from curtailing their First and Fourth Amendment rights in demonstrations to raise attention to police accountability in African American communities.  Since the death of unarmed African American teen Michael Brown at the hands of police in August 2014, Plaintiffs and thousands of others have engaged in First Amendment activities, including planned and spontaneous demonstrations, demanding justice for the family of Michael Brown and other victims of police violence, to bring attention to the indignities of racialized policing in communities of color, and to advocate for reform of police practices. These local demonstrations, which have spurred a

national conversation on racialized policing, have been met with a heavy-handed and militarized police response, chilling their speech.

Since the November 24, 2014, announcement of a St. Louis County Grand Jury's decision not to indict the officer who killed Michael Brown, demonstrations have expanded and have prompted solidarity demonstrations across the country and world. The December 3, 2014, announcement that a New York grand jury refused to indict the officer who killed Eric Garner has further heightened the urgency of racialized police violence and prompted further demonstrations. Including chants such as "It is our duty to fight for our freedom," and "No Justice, No Peace," Plaintiffs believe that public demonstrations are essential to raising awareness of these important issues of public concern and that this message cannot be adequately conveyed through other means.

Plaintiffs' First Amendment activities have been curtailed by intimidation, duress and threats from Defendants' activities. Among other activities, Defendants' unwarranted use of force, including chemical agents such as tear gas and pepper spray, in ways designed to target and punish demonstrators' speech activity, curtails their ability to pursue constitutionally protected First Amendment activities.

Defendants have used chemical agents to trap Plaintiffs and other citizens in confined spaces. Tear gas has been used to cut off exits. Chemical agents have been employed to prevent egress from demonstrations, trapping and harming those

unable to escape. Chemical agents have been employed without warning, as punishment for exercise of protected activity, and without a proper designation of an unlawful assembly. Chemical agents have been employed in a manner not required for the immediate public safety. Citizens have been subjected to excessive force. People engaged in nonviolent non-resisting civil disobedience are being subjected to close range pepper spray and physical violence designed to inflict punishment for the exercise of their First Amendment rights and chill their future ability to do so.

## II. EMERGENCY RELIEF REQUESTED

Plaintiffs wish to continue their First Amendment activity. They have suffered injury and seen others suffer injury as a result of Defendants' actions. Plaintiffs cannot delay further First Amendment activity. As set forth fully in Plaintiffs' Motion, Plaintiffs therefore request that this Court issue a temporary restraining order enjoining Defendants from: refusing to wear visible identification; from declaring an "unlawful assembly" unless there is evidence that six or more persons are gathered in agreement to violate a criminal law through force or violence; from using chemical agents on citizens without clear warning or opportunity to exit, in a closed environment, against those who are not physically resisting, or to punish individuals based on the content of their speech; and ordering that such agents be employed only as a last resort to prevent significant threats to public safety and deployed in a manner designed to minimize impact.

3

Plaintiffs' constitutional rights will be denied, and irreparable harm will result, if this Court does not issue immediate relief enjoining defendants from curtailing Plaintiffs' exercise of free speech.

## III.  THE STANDARD FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER (TRO) AND PRELIMINARY INJUNCTION

Injunctive relief is "an equitable remedy shaped to right an ongoing wrong." Kohl v. Kohl v. Woodhaven Learning Cntr., 865 F.2d 930, 934 (8th Cir. 1989).  In determining whether to issue a TRO or preliminary injunction, the Court must consider: (1) the threat of irreparable harm to the movant if the injunction were not granted; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties to the case; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (en banc), *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014 (N.D. Iowa 2008).

Injunctive relief is necessary because Plaintiffs risk immediate harm through Defendants' actions, and risk curtailment of future first amendment activity. Plaintiffs have no remedy at law. They will continue to suffer irreparable harm unless Defendants' actions are enjoined. The balance of interests demonstrates that the harm to Plaintiffs from the chilling effect on free speech outweighs any injury that this injunction would inflict on Defendants. Plaintiffs have a likelihood of success on the merits, and a preliminary injunction serves the public interest.

**IV.    DEFENDANTS' ACTIONS HAVE CAUSED  PLAINTIFFS TO FEAR PERSONAL INJURY IF THEY  CONTINUE TO PARTICIPATE IN FIRST AMENDMENT ACTIVITY**

The August 9, 2014, killing of Michael Brown sparked an overwhelming response in the community and the nation. His death at the hands of police and the callous disregard for his remains, followed by the subsequent police shootings African Americans Kajieme Powell and Vonderritt Meyers in St. Louis reinforced the longstanding degrading treatment of African Americans by police. People have taken to public streets and sidewalks in the St. Louis area in a series of spontaneous and planned expressive demonstrations to express concern over racialized police violence. These actions accelerated after the announcement on November 24, 2014 that a St. Louis County Grand Jury refused to indict the police officer who killed Michael Brown.  Those engaging in actions have done so as part of a political protest, pursuant to their rights under the First Amendment. Their purpose is seek justice for the deaths of young black men at the hands of police, to bring attention to issues of police violence and racialized policing in communities of color, and to advocate for reform of policing practices.

During the course of these demonstrations, Plaintiffs and others experienced and witnessed numerous incidents in which Defendants implemented policies designed to target and punish demonstrators, to deter them from continuing speech and assembly activities, and to prevent accountability for misconduct by removing

identifying insignia from officers' uniforms while on duty.  These activities were often not preceded by warning or opportunity to disperse, advanced no legitimate law enforcement objective, and were designed to cause distress. As spelled out in Plaintiffs' Complaint and accompanying declarations, such activities have included:

- chemical agents fired without notice, warning or opportunity to disperse;

- chemical agents fired into enclosed spaces;

- chemical agents used against demonstrators whom police had boxed in, and provided no ongoing avenue for exit;

- chemical agents used in circumstances not necessary to protect public safety;

- chemical agents used against individuals who were not resisting arrest;

- chemical agents, use of Tasers, excessive force and arrest as forms of punishment for engaging in constitutionally protected speech;

- lack of visible identification or name badges by police; and

- declaration of demonstrations as "unlawful assemblies" as justification to use chemical agents, without evidence that people were engaged in violations of criminal law through force of violence;

These activities occurred at multiple expressive activities over the days following the Grand Jury announcement. These acts are not isolated to the period following the establishment of the Unified Command but instead reflect a policy

and practice in which the Defendants consistently used chemical agents to punish and cause pain to demonstrators dating back to August 2014.[1]

Plaintiffs thus have basis to fear that they will be further harmed by the behavior of the Defendants' officers. They wish to continue to First Amendment activity and are fearful that they will be forced to either forego exercising their rights or be threatened with future distress, physical injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, and anxiety.

## V.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS AS DEFENDANTS' ACTIONS VIOLATE PLAINTIFFS' FIRST AMENDMENT RIGHTS.

The First Amendment prohibits any governmental action or policy interfering with the right to peaceably assemble or to  petition the government for a redress of grievances.  Here, demonstrators are clearly engaged in political protest.

"Political speech," like a protest, "is core First Amendment speech, critical to the functioning of our democratic system." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1021 (9th Cir. 2009); *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963) (noting that a peaceable sit in at the site of the State Government to protest government action is the "most pristine and classic form" of First Amendment expression). For this reason, the First Amendment "applies with

---

[1] Some of these incidents are documented in a statement submitted to the 53rd Session of the United Nations Committee Against Torture in November 2014.  A copy of that document is attached hereto as Exhibit 11.

particular force" to a "march and other protest activities." *United States v. Baugh*, 187 F.3d 1037, 1042 (9th Cir. 1999).

The public streets and sidewalks where demonstrations occur are traditional public fora. *See, e.g., Edwards v South Carolina,* 372 U.S. 229, 83 S.Ct. 680 (1963); *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). "Consistent with the traditionally open character of public streets and sidewalks," the Supreme Court has held that the government's ability to restrict speech in these locations is very limited. *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014); *NAACP Western Region v. City of Richmond,* 743 F.2d 1346, 1355 (9th Cir.1984) (Restrictions on First Amendment activities in public fora are "subject to a particularly high degree of scrutiny.")

Here, Defendants' targeted use of tear gas and chemical agents did not just incidentally affect protected First Amendment activities; instead the practices were intended to have a deterrent impact on potential participants like Plaintiffs.  Indeed, the targeting of the MoKaBe's Coffeehouse, a known safe space for demonstrators, can only be explained as retaliatory.  Similarly, the indiscriminate and punitive use of tear gas towards people the police themselves had boxed in, operated to instill fear in participants and deter future participation.

The Supreme Court has long applied the "clear and present danger" test to to determine if police interference in protests is constitutional. *NAACP v. Claiborne,* 458 U.S. 886, 908 (1982). Witness accounts reveal no evidence of danger in the

cited demonstrations. Too often, police asserted that demonstrations were "unlawful assemblies" without evidence that six or more people were knowingly assembled in agreement to violate a criminal law with force or violence, as required by RSMo 574.040(1). In many instances no criminal activity was taking place, and thus, an "unlawful assembly" order was not justified.  Even if some violate the law, that is insufficient to justify police interference with the right to protest. *Id.  See also, Jones v. Parmley*, 465 F.3d 45, 56 (2nd Cir. 2006)*,* (Justice Sotomayor, while on the Second Circuit Court of Appeals quoting *Claiborne*: "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected.")

Even if the police determine that a demonstration must disperse, it cannot be used as an excuse to punish participants through chemical agents or to make the experience so frightening or hurtful so as to deter future participation. Yet that is exactly what happened, day after day. Defendants' officers employed chemical agents massively and in ways that cut off egress and trapped people in ways that they could not escape the irritant gas.  These tactics demonstrate a policy far beyond anything necessary to ensure that a protesting crowd remains on a sidewalk. This overreach alone renders it unconstitutional. But, at least to the citizens caught in the gas, the tactics demonstrates more - an intentionality in their brutality - a desire to prevent all but the most hardened demonstrators from continuing to demonstrate.

## VI.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS AS DEFENDANTS' ACTIONS VIOLATE PLAINTIFFS' FOURTH AMENDMENT RIGHTS

Claims of excessive force in detention are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989).  Excessive force is force greater than reasonably necessary in light of the law enforcement interest at stake. *Florida v. Royer* 460 U.S. 491, 504 (1983), *Ganwich v. Knapp*, 310 F. 3d 1115, 1120 (9th Cir. 2003).

Over the course of recent demonstrations, citizens were detained or "seized" by the manner in which the chemical agents and tasers were deployed.  A person is "seized" by the police when an officer by means of physical force "terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California,* 551 U.S. 249, 254 (2007). The arrest of compliant, non-resisting demonstrators on the highway was clearly a seizure but so too were actions of the police in corralling demonstrators at MoKaBe's into the building, corralling demonstrators at Keiner Plaza, or in the area in front of the Ferguson Police Department, preventing their escape and then pummeling them with tear gas, as was also the ongoing use of tear gas in such a manner as to prevent egress.

It is not necessary that the government intended to detain a particular person. Rather "intentionality" is satisfied when the "termination of freedom of movement [occurs] *through means intentionally applied.*" *Brower,* 489 U.S. at 597   "An

10

unintended person ... [may be] the object of the detention,' so long as the detention

is 'willful'" *Id.* at 254 (quoting *Brower,* 489 U.S. at 596) (alterations in original).

Reasonableness of force used to effect a particular seizure is determined by "carefully balancing ... ' the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor* 490 U.S. 386, 396 (1989); *Deorle v. Rutherford* 272 F.3d 1272, 1284-85 (9th Cir. 2001). In determining whether defendants' actions were "objectively reasonable" in an excessive force inquiry, court considers: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham,* 490 U.S. at 396. The pertinent question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). An officer's good intentions will not make an objectively unreasonable use of force constitutional. *Id.*

It is difficult to assess the justification for the detention at MoKaBe's as there was no notice or reason provided. Other instances show similar overreach. In Keiner Plaza, Plaintiff McClain was was restrained when she was stunned with a Taser. In Ferguson, demonstrators were trapped by the way tear gas was employed.

Tear gas is never justified for use on trapped or "detained" individuals. Tear gas is a dangerous chemical agent designed to incapacitate. Any trapped individual

exposed to the gas must be immediately moved to an open, ventilated area.  After global objections to the widespread use of tear gas and chemical herbicides by the United States in Vietnam, the United Nations General Assembly passed Resolution 2603A(1969) reaffirming that use of chemical agents like tear gas is contrary to the international law and the 1925 Geneva Convention Protocol prohibiting the use of Asphyxiating, Poisonous or Other Gases in warfare.[2]

## VII.  DEFENDANTS' PRACTICES REFLECT A POLICY OR CUSTOM

In *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities may be liable for monetary, declaratory or injunctive relief under §1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality.  Liability for a "custom" will lie where there is: (1) a continuing, widespread, and persistent pattern of unconstitutional misconduct, (2) deliberate indifference or tacit authorization of such conduct by policymaking officials after notice of the conduct, and (3) that the custom caused the violation of plaintiffs' constitutional rights. *See, Johnson v. Douglas Cnty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir.2013); *Jane Doe A v. Special Sch. Dist. of St. Louis,* 901 F.2d 642, 646 (8th Cir.1990).

---

[2] Available at:
http://daccess-dds-ny.un.org/doc/RESOLUTION/GEN/NR0/257/37/IMG/NR025737.pd?OpenElement

Plaintiffs have established that officers in different situations conducted themselves in similarly punitive ways.  All of these officers could not have taken the same actions over a period of months without some orders, directions or review by superiors. Indeed these demonstrations have been highly reviewed.  *Abdullah v. County of St. Louis, Mo.* --- F.Supp.3d ----, 2014 WL 4979314 E.D.Mo. 2014 (Finding a custom in Ferguson Police Dept.'s practice of enforcing a requirement that demonstrators keep moving.). Community members met with members of the Unified Command multiple times expressing concerns about just these kinds of police actions; they were clearly aware of the problems and were complicit in the actions. Indeed, in some instances, various co-directors of the Unified Command were present a demonstrations cited in Plaintiffs' complaint and declarations.

## VIII.  IF DEFENDANTS' PRACTICES ARE NOT IMMEDIATELY ENJOINED, PLAINTIFFS WILL SUFFER IRREPARABLE INJURY

Plaintiffs wish to continue expressive activity without fearing of injury by Defendants' officers.  *Abdullah v. Cnty. of St. Louis, Mo.*, No. 4:14CV1436 CDP, 2014 WL 4979314 (E.D. Mo. Oct. 6, 2014) (Finding irreparable injury in Ferguson Dept.'s practice of threatening to arrest demonstrators who failed to keep moving.) "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Iowa Right to Life Comm. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999).

## IX.  THE RELIEF REQUESTED BALANCES THE PUBLIC  INTERESTS AND PROTECTS FIRST AND FOURTH  AMENDMENT RIGHTS

13

"The public interest favors protecting core First Amendment freedoms." *Abdullah v. Cnty. of St. Louis, Mo*., No. 4:14CV1436 CDP, 2014 WL 4979314 (E.D. Mo. Oct. 6, 2014) (Finding that the public interest favored enjoining Ferguson Police practice of threatening arrest if demonstrators failed to keep moving.) *See, also*, *Iowa Right to Life Committee, Inc. v. Williams* 187 F.3d 963 (8th Cir. 1999).

The modest interim relief requested by Plaintiffs balances the needs of the Defendants to maintain order while protecting the constitutional rights of demonstrators. Relief would require (1) that Defendants' officers wear clearly visible identification - a requirement already suggested by the U.S. Dept of Justice; (2) that police may not declare an unlawful assembly without direct evidence that six or more people are gathered to violate a criminal law by force or violence - a baseline already set in Missouri law; and (3) that any use of chemical agents be preceded by a warning, an opportunity to exit and a continuing ability to egress; employing chemical agents only as a last resort to prevent threats to public safety; not employing chemical agents in enclosed space. These modest proposals respond directly to the concerns of the Plaintiffs and do not require a compromise of public safety.  While Plaintiffs' frustration is significant, their proposed remedy is modest, comports with constitutional standards and constitutes sound public policy.

## X.  PLAINTIFFS REQUEST A WAIVER OF THE BOND

The amount of bond, if any, required by Fed.R.Civ.P. 65c, "rests within the discretion of the trial court." *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). When appropriate the bond can be waived or set at a minimum amount. *Heather K. by Anita K. v. City of Mallard, Iowa* 887 F.Supp. 1249 (N.D. Iowa 1995) (bond waived on temporary restraining order); *Abdullah v. Cnty. of St. Louis, Mo.*, No. 4:14CV1436 CDP, 2014 WL 4979314 (E.D. Mo. Oct. 6, 2014) (Setting minimal bond in enjoining Ferguson demonstration practice "Given the constitutional issues at stake here and taking into account plaintiff's status as employee of a not-for-profit entity, I will set the bond in the amount of $100.") Given the constitutional principles at stake here, bond herein should be waived.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court enter a preliminary injunction and, pending the preliminary injunction hearing, that this Court schedule an emergency hearing and issue a temporary restraining order for the relief requested herein.

Dated: 8th day of December, 2014

Respectfully Submitted,

*/s/ Thomas B. Harvey*
Thomas B. Harvey   MBE #61734
Executive Director, ArchCity Defenders
812 N. Collins Alley
St. Louis, MO  63102

(855)724-2489 phone
(855)724-2489 facsimile
tharvey@archcitydefenders.org

*/s/ Brendan Roediger*
Brendan Roediger MBE #60585
Saint Louis University Legal Clinic
100 N. Tucker Blvd., Ste. 704
St. Louis, MO  63101
Phone:  (314) 977-2778
Fax:  (314) 977-1180
broedige@slu.edu

*/s/ Denise D. Lieberman*
Denise D. Lieberman, MBE #47013
Senior Attorney, Advancement Project
1220 L. Street NW, Suite 850
Washington, D.C. 20005
Phone: (314) 780-1833
Fax: (202) 728-9558
dlieberman@advancementproject.org

Justin D. Hansford*
Professor of Law
St. Louis University
100 N. Tucker Blvd.
St. Louis, MO  63101
Phone: (314) 977-3481
jhansford@slu.edu
*licensed in Maryland

Nicole C. Lee, Esq.*
The Lee Bayard Group, LLC
6930 Piney Branch Road, NW
Washington, DC 20012
(202)270-0774

nicole@leebayard.com
*Licensed in the District of Columbia
Bar #499275

L. KING DOWNING*
2035 Second Avenue 5
New York, New York 10029
office/fax (212) 534-1081
kingnetic@yahoo.com
*licensed in New Jersey
Lic. #034901992

COUNSEL FOR PLAINTIFFS